IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GERSHMAN PROPERTIES, LLC | § § § | |
| Plaintiff, | § § | |
| VS. | § § | NO. 3-10-CV-1735-BD |
| METALS USA BUILDING PRODUCTS, L.P., ET AL. | § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

This commercial lease dispute is before the court on cross-motions for partial summary judgment. At issue is whether the surrender covenant of a lease, which requires the tenant to deliver the premises at the termination of the lease agreement "in the same good order and condition as existed at the beginning date of [the] lease, ordinary wear, natural deterioration beyond the control of the Tenant . . . excepted[,]" modifies the tenant's obligation to maintain the premises "in good repair and condition" during the lease term. Concluding that the obligation to maintain the leased premises "in good repair and condition" operates independent of the surrender covenant and its exception, the court resolves this issue in favor of the landlord and against the tenant.

I.

A brief recitation of the facts is necessary to the disposition of the pending motions. Defendant Metals USA Building Products, L.P. ("Metals USA"), a Texas limited partnership, leased a commercial warehouse in Mesquite, Texas, from Plaintiff Gershman Properties, LLC ("Gershman"), a California limited liability company. (*See* Plf. MSJ App. at 4-26, 37).[1] Sometime

---

[1] The parties to the original lease agreement, which is dated April 22, 1968, are J.L. Williams Co., Inc., as landlord, and Howmet Corporation, as tenant. (*See* Plf. MSJ App. at 3). Plaintiff and defendant acquired their respective interests in the lease by assignment.

after the lease expired on December 31, 2009, plaintiff inspected the warehouse and determined that substantial repairs were needed to restore the premises to a leasable condition. (*See id.* at 31-33). Plaintiff obtained a bid in the amount of $1.8 million for repairs to the property. (*See* Plf. Compl., Exh. A). When defendant refused to make or pay for the repairs, plaintiff filed this action in federal district court.

The subject of this dispute is Paragraph 2 of the Lease Agreement, entitled "Maintenance By Tenant," which provides:

> *Tenant shall, at its own risk and expense, maintain the entire demised premises and all improvements thereon during the term of this lease*, including, but not limited to, maintaining the roof, interior and exterior walls, *in good repair and condition* (including all necessary replacements), and including regular mowing of any grass, trimming, weed removal and regular removal of debris. Tenant shall repaint the exposed wooden doors or other exposed parts of the building which reasonably require periodic repainting to prevent deterioration thereof, and Tenant shall take good care of all of the property and its fixtures, including all glass, and suffer no waste. Landlord agrees that Tenant may have the benefit of any warranty which Landlord may have on said premises and improvements from the manufacturers, suppliers or sub-contractors who furnished materials or performed services in connection with the construction of the improvements on said premises, including, but not limited to, warranties on the roof and on the heating and air conditioning equipment.
>
> Should Tenant neglect to reasonably keep and maintain the herein demised premises, Landlord shall have the right (but not the obligation) to have said work done, and any reasonable costs therefor will be charged to Tenant as additional rental and payable by the Tenant with the payment of the rental next due. *At the termination of this lease agreement Tenant shall deliver the premises broom clean and in the same good order and condition as existed at the beginning date of this lease, ordinary wear, natural deterioration beyond the control of the Tenant, and damage by fire, tornado or other casualty excepted.*

(Plf. MSJ App. at 5, ¶ 2) (emphases added). Plaintiff interprets this provision to require the tenant to replace or repair property that is not kept in "good repair and condition" during the term of the

lease, even if ordinary wear and natural deterioration caused the decline. Defendant argues that the maintenance obligation does not apply to repairs caused by "ordinary wear, natural deterioration beyond the control of the Tenant" at any time during the lease term. Neither party contends that these provisions are ambiguous, and both ask the court to resolve this question of law on summary judgment.

II.

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A party seeking summary judgment who does not have the burden of proof at trial need only point to the absence of a genuine fact issue. *See Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). This may be done by "pointing out 'the absence of evidence supporting the nonmoving party's case.'" *Id.*, quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir.), *cert. denied*, 113 S.Ct. 98 (1992). By contrast, a movant who bears the burden of proof at trial must establish "beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). Once the movant meets its initial burden, the nonmovant must show that summary judgment is not proper. *See Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 113 S.Ct. 82 (1992). Cases involving the interpretation of an unambiguous lease are particularly appropriate for summary disposition. *See, e.g. Custer Parker Ltd. v. F.W. Woolworth Co., Inc.*, No. 3-97-CV-0693D, 1998 WL 47644 at *1 (N.D. Tex. Feb. 2, 1998), *citing Travelers Ins. Co. v. Liljeberg Enterprises, Inc.*, 7 F.3d 1203, 1206-08 (5th Cir. 1993).

A.

Under Texas law, which provides the rule of decision in this diversity case,[2] the interpretation of a lease agreement is governed by the same rules that apply to the interpretation of other contracts. *Weingarten Realty Investors v. Albertson's, Inc.*, 66 F.Supp.2d 825, 838 (S.D. Tex. 1999), *aff'd*, 234 F.3d 28 (Table), 2000 WL 1568171 (5th Cir. Sept. 13, 2000). "[T]he interpretation of an unambiguous contract is a question of law for the court to decide by 'looking at the contract as a whole in light of the circumstances present when the contract was entered.'" *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004), *quoting Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983). A contract is unambiguous if it is so worded that it can be given a certain or definite legal meaning or interpretation. *Id., citing National Union Fire Ins. Co. of Pittsburgh v. CBI Industries, Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). Conversely, a contract is ambiguous when, after applying established rules of construction, the language of the contract is susceptible to two or more reasonable interpretations or meanings. *Id.*; *see also American Manufacturers Mutual Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). However, "[a] contract is not ambiguous merely because the parties to an agreement proffer conflicting interpretations of a term." *Gonzalez*, 394 F.3d at 392, *quoting International Turbine Services, Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 497 (5th Cir. 2002).

In construing a written contract, the court's primary concern is to ascertain the true intent of the parties as expressed in the instrument. *Gonzalez*, 394 F.3d at 392; *see also Resolution Trust Corp. v. Cramer*, 6 F.3d 1102, 1106 (5th Cir. 1993). "The terms used in the [contract] are given their plain, ordinary meaning unless the [contract] itself shows that the parties intended the terms to have a different, technical meaning." *Gonzalez*, 394 F.3d at 392, *quoting American National General Ins. Co. v. Ryan*, 274 F.3d 319, 323 (5th Cir. 2001). Moreover, contracts must be construed in their

---

[2] Both parties agree that Texas law governs the interpretation of the lease agreement. (*See* Plf. MSJ Br. at 2; Def. MSJ Resp. Br. at 6).

entirety "so that the effect and meaning of one part on any other part may be determined." *Texas v. American Tobacco Co.*, 463 F.3d 399, 408 (5th Cir. 2006), *quoting Smart v. Tower Land & Investment Co.*, 597 S.W.2d 333, 337 (Tex. 1980). "[C]ourts must be particularly wary of isolating from its surroundings or considering apart from other provisions a single phrase, sentence, or section of a contract." *Id., quoting State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995). To the extent possible, the court should "harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Bank One Texas, N.A. v. FDIC*, 16 F.Supp.2d 698, 707 (N.D. Tex. 1998), *citing Coker*, 650 S.W.2d at 393; *see also TrueBeginnings, LLC v. Spark Network Services, Inc.*, 631 F.Supp.2d 849, 853 (N.D. Tex. 2009) (Kaplan, J.).

B.

Applying these well-established rules of contract construction, the court determines that the "ordinary wear, natural deterioration beyond the control of the Tenant" exception to the surrender covenant does not modify the maintenance covenant or otherwise excuse the tenant from making repairs to the premises occasioned by ordinary wear and natural deterioration during the term of the lease. The maintenance covenant requires the tenant -- *throughout the term of the lease* -- to maintain, at its own expense, the entire leased premises "in good repair and condition." (*See* Plf. MSJ App. at 5, ¶ 2). The tenant's obligations include: (1) maintenance of the roof, as well as interior and exterior walls; (2) regular mowing, trimming, and removal of weeds and debris; and (3) periodic repainting of exposed wooden doors and other parts of the building to prevent deterioration. (*Id.*). There are no exceptions to these obligations. By express covenant, the lease incorporates the implied duty of the tenant to "take good care of all of the property," including fixtures and glass, and to "suffer no waste." (*Id.*). "Waste," as defined by the Texas Supreme Court, is "an injury to the reversionary interest in [property] caused by the wrongful act of a tenant or other party rightfully in

possession[.]" *R.C. Bowen Estate v. Continental Trailways*, 256 S.W.2d 71, 72 (Tex. 1953). A covenant against waste requires the tenant "to use reasonable care to protect leased premises from injury other than that ordinarily resulting from wear and tear." *Id.*; *see also King's Court Raquetball v. Dawkins*, 62 S.W.3d 229, 233 (Tex. App. -- Amarillo 2001, no. pet.). Under Paragraph 2, the duty to prevent negligent waste is in addition to the tenant's obligation to maintain the property in good condition. (*See* Plf. MSJ App. at 5, ¶ 2). To assist the tenant with its comprehensive maintenance obligations, the lease grants the tenant the benefit of any warranties held by the landlord on the roof, heating and air conditioning equipment, and other improvements on the property. (*Id.*). The lease further provides that, if the tenant fails to maintain the property as required, the landlord may make the repairs for the tenant at the tenant's expense. (*Id.*).

The surrender covenant requires the tenant to deliver the premises "in the same good order and condition as existed at the beginning date of [the] lease, ordinary wear, natural deterioration beyond the control of Tenant . . . excepted." (*Id.*). This provision plainly applies only to the condition of the property *at the end of the lease term*. In the instant case, the lease began with the delivery of a brand new warehouse to the tenant in 1968. (*See id.* at 4). The primary term of the lease was for 20 years, (*see id.*), with a renewal option for an additional 20 years, "[p]rovided Tenant is not in default of any term, condition or covenant[.]" (*Id.* at 19, ¶ 28). Without an exception for ordinary wear and natural deterioration, the surrender covenant would require the tenant to return a new building to the landlord upon the expiration of the lease term 40 years later. The "ordinary wear" exception permits the return of a 40-year old building. Some natural deterioration is allowed so long as the deterioration could not have been prevented by the tenant's faithful execution of its comprehensive maintenance obligations. That is, the exception excuses ordinary wear and natural deterioration only to the extent any such conditions are "*beyond the control of the Tenant*[.]" (*See*

*id.* at 5, ¶ 2) (emphasis added). The tenant is still obligated to maintain the warehouse in good condition throughout the lease term and to prevent deterioration of the premises. Thus, the maintenance covenant imposes upon the tenant a duty to maintain the warehouse in a condition *better* than the condition in which the surrender covenant requires the tenant to deliver the premises to the landlord at the end of the lease term.

This interpretation of the lease is supported by *Nadler v. American Motor Sales Corp.*, 764 F.2d 409 (5th Cir. 1985). In *Nadler*, the landlord sued a former tenant for breach of the maintenance and surrender covenants under a commercial lease agreement. Like the instant dispute, *Nadler* involved a new building and a 20-year lease. *See Nadler*, 764 F.2d at 415. The maintenance covenant obligated the tenant to keep the premises "in good order and condition" during the lease term, and to surrender the property at the termination of the lease "in the same condition as when received except for reasonable use and natural wear." *Id.* at 411. The tenant argued that the "reasonable use and natural wear" exception modified both the maintenance covenant and the surrender covenant, thereby absolving the tenant of responsibility for fixing any equipment that simply wore out during the term of the lease. *Id.* at 414. However, the Fifth Circuit concluded that the lease agreement obligated the tenant to repair or replace equipment on the leased premises if it fell below "good order and condition" during the lease term, even if reasonable use and natural wear caused the decline. *See id.* at 416. A contrary finding, the court reasoned, "would virtually nullify the repair covenant, making the [tenant] responsible only for fixing disrepair that arises through its own negligence or other fault." *Id.* The holding in *Nadler* is consistent with Texas law, which has long recognized that maintenance and surrender covenants can impose two different duties on a tenant. *See, e.g. Clark & Johnson v. Hamilton*, 16 S.W.2d 833, 834 (Tex. Civ. App. -- El Paso 1929,

no writ); *Beverly Enterprises Texas, Inc. v. Morton*, No. 07-03-0104-CV, 2005 WL 1277895 at *2 (Tex. App. -- Amarillo 2005, pet. denied).[3]

Defendant argues that other provisions in the lease, when read in conjunction with Paragraph 2, demonstrate that the maintenance and surrender covenants have no meaningful distinction and that both allow for ordinary wear or natural deterioration. To the contrary, two of the provisions cited by defendant support the court's interpretation of the lease.[4] In particular, Paragraph 12 requires the tenant to maintain the air conditioning and heating systems installed by the landlord "in good operating condition" and make all necessary repairs at its expense. (*See* Def. MSJ App. at 10-11, ¶ 12). Upon termination of the lease, the tenant must "deliver the same to the Landlord in the same condition as when received by the Tenant, normal wear and deterioration alone excepted." (*Id.*). Paragraph 3, which permits the tenant to make alterations and improvements to the property with the consent of the landlord, requires the tenant to "restore the property to its original condition, reasonable deterioration excepted[,]" upon termination of the lease. (*See id.* at 5-6, ¶ 3). Like Paragraph 2, these other lease provisions either impose a duty on the tenant or allow the tenant to make improvements to the property *during the term of the lease*, and impose a lesser duty on the tenant to return the property to the landlord, with an allowance for normal wear and deterioration, *at the end of the lease term*. The court therefore determines that the maintenance and surrender covenants operate independent of each other.

---

[3] In support of its argument that *Nadler* represents a "break from Texas contract law," defendant relies heavily on *Fisher v. Temco Aircraft Corp.*, 324 S.W.2d 571 (Tex. Civ. App. -- Texarkana 1959, no writ). In *Fisher*, the court held that the exception in a surrender covenant for "natural deterioration and damage by fire, tornado or other casualty" essentially modified the tenant's obligation to keep the interior of a leased building in "good repair" during the term of a one-year lease. *See Fisher*, 324 S.W.2d at 575-76. Unlike the lease at issue herein, the surrender covenant in *Fisher* did not limit the exception to natural deterioration "beyond the control of Tenant." Nor did the tenant in *Fisher* have the exclusive obligation to maintain the entire premises in good condition throughout a lengthy lease term. Thus, *Fisher* is easily distinguishable on its facts.

[4] These other lease provisions pertain to condemnation proceedings and liability for damages caused by the negligence or misconduct of the tenant. (*See* Def. MSJ App. at 8-9, ¶¶ 7-8). Neither provision has any relevance to the maintenance and surrender covenants in Paragraph 2.

C.

Defendant also seeks partial summary judgment on its affirmative defense of quasi-estoppel. The doctrine of quasi-estoppel "precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken." *Clark v. Cotten Schmidt, L.L.P.*, 327 S.W.3d 765, 770 (Tex. App. -- Fort Worth 2010, no pet.), *quoting Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000). "The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit." *Id.* Stated differently, "quasi estoppel forbids a party from accepting the benefits of a transaction . . . and then subsequently taking an inconsistent position to avoid corresponding obligations or effects." *Atkinson Gas Co. v. Albrecht*, 878 S.W.2d 236, 240 (Tex. App. -- Corpus Christi 1994, writ denied).

Succinctly stated, defendant argues that plaintiff cannot sue for breach of the lease agreement because it voluntarily extended the lease twice, thereby tacitly acknowledging that defendant was not in default of its obligations thereunder. On December 10, 2008, the parties entered into a Third Amendment to Lease Agreement, which gives the tenant the option to extend the lease term for two years, "[p]rovided Tenant is not in default beyond any applicable grace period[.]" (*See* Def. MSJ App. at 34, ¶ 3). Even if this condition to exercising the option applies to the maintenance and surrender covenants, the parties entered into a Fourth Amendment to Lease Agreement on June 30, 2009, which established a termination date of December 31, 2009. (*See id.* at 37-38). The Fourth Amendment is the operative lease agreement and prohibits any further extensions. Moreover, defendant's quasi-estoppel argument ignores the fact that the maintenance covenant operates independent of the surrender covenant. Because the surrender covenant cannot be breached until the

lease ends, it is not necessarily inconsistent for plaintiff to extend the lease and then sue defendant for breach of the surrender covenant when the lease terminates.

## CONCLUSION

In sum, the court determines that defendant's obligation to maintain the leased premises "in good repair and condition" during the term of the lease operates independent of its obligation to deliver the premises to the landlord "in the same good order and condition as existed at the beginning date of [the] lease, ordinary wear, natural deterioration beyond the control of the Tenant . . . excepted." Accordingly, plaintiff's motion for partial summary judgment [Doc. #19] is granted and defendant's motion [Doc. #23] is denied. The remaining issues in this case will be addressed at a status conference to be set by separate order.

SO ORDERED.

DATED: December 1, 2011.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE